**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |  |
|---|---|---|
| **Vertex Pharmaceuticals Incorporated**, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| **John A. Squires**, in his official capacity as | ) | COMPLAINT |
| Under Secretary of Commerce for Intellectual | ) | |
| Property and Director, United States Patent | ) | |
| and Trademark Office, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiff Vertex Pharmaceuticals Incorporated ("Plaintiff" or "Vertex"), by and through its undersigned attorneys, for its Complaint against Defendant John A. Squires, in his official capacity as Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office ("Defendant" or "Director"), alleges as follows:

**NATURE OF THE CASE**

1.      This is an action by Vertex, the owner and assignee of United States Patent No. 12,350,262 ("the '262 patent") (attached as Exhibit A), entitled "Methods of Treatment for Cystic Fibrosis." Pursuant to 35 U.S.C. § 154(b)(4)(A), 5 U.S.C. §§ 701-706, and the Fifth Amendment to the United States Constitution, Vertex seeks judgment that the Director failed to award the full patent term adjustment ("PTA") owed for the '262 patent. Vertex accordingly requests that the Director be ordered to correct the PTA for the '262 patent from 0 days to 23 days.

2.      As detailed below, the Director improperly failed to award 23 days of term to which the '262 patent is entitled because he incorrectly relied upon a unilaterally withdrawn, vacated, and superseded office action when calculating PTA.

## THE PARTIES

3.      Vertex is a corporation organized and existing under the laws of Massachusetts with its principal place of business at 50 Northern Avenue, Boston, MA 02210. Vertex is a biopharmaceutical company committed to improving the lives of patients worldwide. Vertex spends the majority of its operating expenses on research and development and is the only company to have invented and received FDA approval for transformative medicines for people with cystic fibrosis.

4.      Defendant, John A. Squires, is named in his official capacity as the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office ("USPTO"). Defendant is responsible for superintending or performing all duties required by law with respect to the granting and issuing of patents. By statute, Defendant is the official responsible for determining the period of patent term adjustment under 35 U.S.C. § 154(b).

## JURISDICTION AND VENUE

5.      This Court has jurisdiction and is authorized to issue the relief sought under 28 U.S.C. §§ 1331, 1338(a), and 1361; 35 U.S.C. § 154(b)(4)(A); and 5 U.S.C. §§ 701-706.

6.      Venue is proper in this district under 35 U.S.C. § 154(b)(4)(A) and 28 U.S.C. § 1391(e)(1).

7.      This action is timely filed in accordance with 35 U.S.C. § 154(b)(4)(A) because it is being filed within 180 days after the Defendant's January 7, 2026, Decision Denying Vertex's Patent Term Adjustment Petition (attached as Exhibit B).

## BACKGROUND AND COMMON ALLEGATIONS

8.    By statute, the Director must compensate a patent applicant for USPTO delays in issuing a patent. Here, the '262 patent did not receive the total adjustment to which it is entitled by law.

9.    The '262 patent covers a method of treating cystic fibrosis ("CF") with elexacaftor, tezacaftor, and ivacaftor, the active ingredients in Trikafta®, a groundbreaking treatment that has had a transformative impact on tens of thousands of patients, including those as young as two years old. Ex. A; Ex. C at 1, 4.

10.    Cystic fibrosis is a rare, life-threatening genetic disease caused by a defective or missing CFTR (Cystic Fibrosis Transmembrane Conductance Regulator) protein caused by mutations in the CFTR gene. This results in decreased transport of chloride ions through the cell membrane, causing mucus accumulation in the lungs and accompanying microbial infections that ultimately cause death in CF patients. Ex. A at 1:13-32, 2:16-30.

11.    The Trikafta® product covered by the '262 patent's method-of-treatment claims is a combination therapy of specific CFTR "correctors" and "potentiators" that work together to increase the quantity and function of CFTR proteins. *See id.* at 3:52-60, 108:16-110:30; Ex. C at 1, 4. The FDA approved Trikafta® in 2019, after previously awarding the product Fast Track Designation, Breakthrough Therapy Designation, Orphan Drug Designation, and Priority Review Designation. Ex. C at 3.

12.    Citing a study performed by Vertex, it is reported that patients who begin using Trikafta® between the ages of 12 and 17 have a life span 45.4 years longer than that estimated for CF patients on supportive care alone. *See* Ex. R at 1-2 (citing Ex. S). "Early treatment with this triple-combination therapy can help people with CF 'achieve near-normal life expectancy.'" *Id.* (citing Ex. S).

**A.**      **Patent Term Guarantee**

13.      In the mid-1990s, the United States altered the framework setting the term of a United States patent. *See* Ex. T, Pub. L. No. 103–465, § 532(a)(1), 108 Stat. 4809, 4984 (1994).

14.      Previously, each patent's lifespan had stretched 17 years from its issuance. But from 1995 on, the United States began setting patent term as 20 years from the filing date of the application underlying the patent. *Id.*; *see also* 35 U.S.C. § 154(a)(2). As a result, each day of patent prosecution before the USPTO shortens a patent's enforceable term.

15.      To address concerns regarding the impact of USPTO delay on patent term under the new system, the Patent Term Guarantee Act of 1999 created PTA to award additional patent term to compensate patent applicants for delays at the USPTO. *See* Changes To Implement Patent Term Adjustment Under Twenty-Year Patent Term; Final Rule, 65 Fed. Reg. 56366, 2000 WL 1335928 (Sep. 18, 2000); H.R. Rep. No. 105-39, 1997 WL 136374, at *64-65 (Mar. 20, 1997); Ex. D at 125-26 (H.R. Rep. No. 106-464, at 125-26 (1999)). To this end, 35 U.S.C. § 154(b) identifies specific USPTO delays for which the Director must compensate patent applicants with PTA and prescribes how PTA should be calculated.

16.      35 U.S.C. § 154(b)(1)(A) guarantees a patent applicant "prompt Patent and Trademark Office responses." Where the USPTO fails to carry out certain acts during processing and examination of a patent application within defined deadlines (referred to as "A Delay"), this section of the statute requires the Director to award the patent applicant one day of PTA for each day of USPTO delay. 35 U.S.C. § 154(b)(1)(A); *see also* 37 C.F.R. § 1.703.

17.      As relevant here, one statutory A Delay is the USPTO's failure to "respond to a reply under section 132 [of 35 U.S.C.] … within 4 months after the date on which the reply was filed." 35 U.S.C. § 154(b)(1)(A)(ii).

18. Other portions of the statute provide further guarantees to patent applicants. 35 U.S.C. § 154(b)(1)(B) guarantees a patent applicant "no more than 3-year application pendency." This is known as "B Delay."

19. And 35 U.S.C. § 154(b)(1)(C) guarantees a patent applicant PTA where patent issuance is delayed by ancillary USPTO proceedings (such as derivations, secrecy orders, and appeals). This is known as "C Delay."

20. The Director must calculate the USPTO's total A, B, and C delay, reduce that delay "by a period equal to the period of time during which the applicant failed to engage in reasonable efforts to conclude prosecution of the application" ("Applicant Delay"), and award the resultant net total as patent term adjustment. 35 U.S.C. § 154(b)(2), (3); *see also* 37 C.F.R. § 1.704.

21. The statute provides that patentees dissatisfied with the Director's PTA determination may seek reconsideration. 35 U.S.C. § 154(b)(3)(B)(ii).

22. Thereafter, under 35 U.S.C. § 154(b)(4)(A), "[a]n applicant dissatisfied with the Director's decision on the applicant's request for reconsideration under paragraph (3)(B)(ii) shall have exclusive remedy by a civil action against the Director filed in the United States District Court for the Eastern District of Virginia within 180 days after the date of the Director's decision on the applicant's request for reconsideration. Chapter 7 of title 5 shall apply to such action."

**B.      Prosecution History of the '262 Patent**

23. United States patent application No. 17/899,660 ("the '660 application") was filed by Vertex on August 31, 2022, as a continuation of an earlier application filed July 17, 2018, and issued as the '262 patent on July 8, 2025. Ex. A at cover; *see also* Ex. E at 9.

24. The claims of the '262 patent as issued by the USPTO are directed to "[a] method of treating cystic fibrosis comprising administering to a patient in need thereof: (a) 200 mg once

daily of crystalline Form A of Compound I …, (b) 100 mg once daily of amorphous Compound II …[,] and (c) 150 mg per dose twice daily of amorphous Compound III ….” Ex. A at 108:16-67.

25. The Director determined that the '262 patent is entitled to 0 days of PTA based on 66 days of A Delay, 0 days of B Delay, 0 days of C Delay, and 89 days of Applicant Delay. *See* Ex. F. Vertex does not dispute the Director's calculations for B Delay, C Delay, or Applicant Delay. But the Director erred in his calculation of A Delay and net PTA.

26. As relevant here, on January 5, 2024, the USPTO mailed a non-final office action. This was 14 months and 66 days after filing the '660 application. Ex. G.

27. This resulted in 66 days of A Delay, as reflected in the Director's PTA calculation. Ex. F at Entry 38.

| 38 | 01/05/2024 | Mail Non-Final Rejection | 66 | 0 | 0.5 |

28. Vertex filed a reply to the January 5, 2024, Office Action on July 3, 2024, amending the claims to the form ultimately allowed by the USPTO and issued in the '262 patent. Ex. H at 2-4, 12; Ex. A at 108:16-110:30.

29. On July 18, 2024, the USPTO mailed a subsequently vacated office action that was purportedly responsive to Vertex's July 3, 2024, Reply. Ex. I at 1-2; Ex. F at Entry 57.

30. The subsequently vacated July 18, 2024, Office Action did not set forth any statutory grounds of rejection for the pending claims. *See generally* Ex. I.

31. The subsequently vacated July 18, 2024, Office Action only rejected all pending claims for nonstatutory obviousness-type double patenting over claims 1-21 of U.S. Patent No. 10,793,547 (“the '547 patent”). *Id.* at 4-5.

32. Specifically, the Examiner claimed that,

[a]lthough the claims at issue are not identical, they are not patentably distinct from each other because, the compounds and method of using them are the same in the

instant [application] and US '547, but compound I is in crystal form A in the instant [application]. The instant [application] doses are not excluded in US '547. The instant [application] doses are embraced by the dose in the patent, e.g. claim 1. Also, establishing a dose is not patentable under the US patent practice. *In re Aller*, 105 USPQ 232, 235; 220F.2d 454, 456 (CCPA, 1955). "Where the general conditions of a claim are disclosed in the prior art, it is not inventive to discover the optimum workable dose". *In re Aller*, 105 USPQ 232, 235 (CCPA, 1955), *In re Russell*, 169 USPQ 426, 439 F2d 1228 (CCPA, 1971).

When a crystal is in a wet environment or in solution the crystalline bonds will change. As old bonds are broken new ones are formed. Finally, the crystal will acquire only the most thermodynamically stable form at the lowest energy level of the compound, which must be the same in the instant [application] and the patent. This is particularly true once they are in body fluids. According to the second law of thermodynamics, this change is spontaneous. The structure of every compound being most stable at its lowest energy level follows the basic principle of chemical thermodynamics, which can be found in high school or college freshman chemistry textbooks.

It is also well-known in the art that a crystal is not the therapeutic agent because, it loses its crystalline structure and transforms to the basic active compound, which then binds a receptor site. *Haleblian et al.*, J. Pharm. Sc. (1969), vol. 58(8), pp. 911-929.

Compounds I-III in the instant [application] and in US '547 are the same, respectively. A compound is expected to acquire the same thermodynamically stable form at its lowest energy level, particularly in aqueous composition, e.g. blood, etc. This is also true for powder or solid composition but at a much slower rate. There is no evidence in the specification that chemical thermodynamic is not true for compounds I-III.

Having known as set forth above, a POSA would have known and be motivated to avoid the patent by claiming crystal or amorphous [forms] of the compounds at the time the invention was made. There is reasonable expectation of success because applicant use the compounds exactly as claimed in the patent.

Ex. I at 4-5.

33. The USPTO thus recognized that the claims of the pending application and claims 1-21 of the '547 patent differed in that "compound I is in crystal form A in the instant" application. *Id.* at 4.

34. The USPTO's obviousness-type double-patenting rejection in the subsequently vacated July 18, 2024, Office Action was based on the alleged "spontaneous" change of chemical

compounds "in a wet environment" to "the most thermodynamically stable form at the lowest energy level of the compound, which must be the same in the instant [application] and the patent." *Id.*

35.    The stated basis of the subsequently vacated July 18, 2024, Office Action was not any alleged obviousness of selecting the claimed crystal or amorphous forms of Compound I, Compound II, or Compound III in view of the claims of the '547 patent. *See id.* at 4-5.

36.    The stated basis of the subsequently vacated July 18, 2024, Office Action did not put Vertex on notice of a rejection based on any alleged obviousness of selecting the claimed crystal or amorphous forms of Compound I, Compound II, or Compound III in view of the claims of the '547 patent. *See generally id.*

37.    A reply to the subsequently vacated July 18, 2024, Office Action would have required addressing the Examiner's rationale based on the alleged "spontaneous" change of chemical compounds "in a wet environment" to "the most thermodynamically stable form at the lowest energy level of the compound, which must be the same in the instant [application] and the [claims of the '547] patent." *Id.* at 4.

38.    A reply to the subsequently vacated July 18, 2024, Office Action would not have required addressing any alleged obviousness of selecting a specific crystal or amorphous form of Compound I, Compound II, and Compound III in view of the claims of the '547 patent.

39.    On December 13, 2024, without any back and forth or give and take with Vertex regarding the July 18, 2024, Office Action, the USPTO *sua sponte* "Withdr[ew]" and "Vacat[ed]" the July 18, 2024, Office Action. Ex. F at Entry 57.

40.    This action is reflected in the USPTO's Patent Center records (*id.*).

| 57 | 12/13/2024 | Withdrawing/Vacating Office Action Letter | | 0 | 0 |
|---|---|---|---|---|---|

41.     On December 13, 2024, without any back and forth or give and take with Vertex regarding the subsequently vacated July 18, 2024, Office Action, the '660 application was forwarded to the Examiner for examination. *See id.* at Entry 58; Ex. E at 4; Ex. I.

42.     This action is reflected in the USPTO's Patent Center records (Ex. F at Entry 58).

| 58 | 12/13/2024 | Date Forwarded to Examiner | | 0 | 0 |
|---|---|---|---|---|---|

43.     On December 13, 2024, without any back and forth or give and take with Vertex regarding the July 18, 2024, Office Action, the USPTO *sua sponte* entered a new office action ("Final Rejection") into its official records. *See id.* at Entry 59; Ex. E at 4; Ex. J.

44.     This action is reflected in the USPTO's Patent Center records (Ex. F at Entry 59).

| 59 | 12/13/2024 | Final Rejection | | 0 | 0 |
|---|---|---|---|---|---|

45.     On December 19, 2024, without any back and forth or give and take with Vertex regarding the July 18, 2024, Office Action, the USPTO mailed the new Office Action in response to Vertex's July 3, 2024, Reply. *See id.* at Entry 60; Ex. J at 1-2; *see also* Ex. E at 4, 6.

46.     This action is reflected in the USPTO's Patent Center records (Ex. F at Entry 60).

| 60 | 12/19/2024 | Mail Final Rejection (PTOL-326) | | 0 | 0 |
|---|---|---|---|---|---|

47.     The December 19, 2024, Office Action expressly stated that it "supersedes the previous communication." Ex. J at 3.

48.     The patent term adjustment record on the USPTO's Patent Center likewise indicates that the July 18, 2024, Office Action was "Withdraw[n]/Vacat[ed]" on December 13, 2024. Ex. F at Entry 57.

| 57 | 12/13/2024 | Withdrawing/Vacating Office Action Letter | | 0 | 0 |
|---|---|---|---|---|---|

49.     There was no interview held between Vertex and the USPTO between the vacated July 18, 2024, Office Action and the superseding December 19, 2024, Office Action. *See* Ex. E at 4.

50.     Vertex filed no reply to the vacated July 18, 2024, Office Action prior to the superseding December 19, 2024, Office Action. *See id.*

51.     The December 19, 2024, Office Action was issued *sua sponte* by the USPTO without any back and forth or give and take with Vertex. *See id.*

52.     The December 19, 2024, Office Action was mailed by the USPTO four (4) months and 46 days after Vertex's July 3, 2024, Reply. Ex. E at 4, 6.



53.     In the December 19, 2024, Office Action, the USPTO rejected all pending claims on the ground of nonstatutory obviousness-type double patenting as being unpatentable over claims 1-21 of the '547 patent. Ex. J at 4.

54.     Specifically, the December 19, 2024, Office Action, stated:

> Although the claims at issue are not identical, they are not patentably distinct from each other because, the compounds and method of using them are the same in the instant [application] and US '547, but compound I is in crystal form A in the instant. The instant [application] doses are not excluded in US '547. The instant [application] doses are embraced by the dose in the patent, e.g. claim 1. Also, establishing a dose is not patentable under the US patent practice. *In re Aller*, 105

USPQ 232, 235; 220F.2d 454, 456 (CCPA, 1955). "Where the general conditions of a claim are disclosed in the prior art, it is not inventive to discover the optimum workable dose". *In re Aller*, 105 USPQ 232, 235 (CCPA, 1955), *In re Russell*, 169 USPQ 426, 439 F2d 1228 (CCPA, 1971).

Compound I, in US 547, embraces the amorphous and crystals thereof. The selection of any of the crystals or the amorphous is an obvious modification available for the preference of an artisan.

Having known as set forth above, a POSA would have known and be motivated to avoid the patent by claiming crystal or amorphous [forms] of the compounds at the time the invention was made. There is reasonable expectation of success because applicant use the compounds exactly as claimed in the patent.

*Id.*

55. The December 19, 2024, Office Action was thus premised on the alleged obviousness of the "selection of any of the crystals or the amorphous" forms based on the claims of the '547 patent. *Id*.

56. The December 19, 2024, Office Action was not based on any alleged "spontaneous" change of chemical compounds "in a wet environment" to "the most thermodynamically stable form at the lowest energy level of the compound, which must be the same in the instant [application] and the patent," as had been asserted in the withdrawn, vacated, and superseded July 18, 2024, Office Action. *Compare* Ex. J at 4, *with* Ex. I at 4-5.

57. A reply to the rationale for the rejection in the withdrawn, vacated, and superseded July 18, 2024, Office Action would not have been responsive to the new and different rationale for the rejection in the December 19, 2024, Office Action.

58. Despite the July 18, 2024, Office Action having been unilaterally withdrawn, vacated, and superseded by the USPTO, the December 19, 2024, Office Action stated that "[t]he response period set forth in the [office action] mailed 7/18/24, continues to run." Ex. J at 3.

59. In view of this statement, on January 17, 2025, Vertex paid fees for a three-month extension of time and Notice of Appeal out of an abundance of caution. Ex. K.

60.     The USPTO later agreed to refund these fees in response to Vertex's request for a refund based on it being improper for the Office to have "maintain[ed] the response period from July 18, 2024 once the previous communication was withdrawn" and vacated as reflected in Entry 57 of the USPTO's PTA calculation. Ex. L at 7-8; Ex. M; Ex. F at Entry 57.

61.     On February 7, 2025, Vertex filed a Request for Continued Examination and Reply to the December 19, 2024, Office Action. Ex. N.

62.     In its February 7, 2025, Reply to the December 19, 2024, Office Action, Vertex argued, *inter alia*, that "[b]ecause the claims of the '547 patent are silent on the many options specified in Applicant's pending claims, the POSA would not be motivated to make the required selections, let alone the required combination of selections, to arrive at the subject matter of Applicant's claims," and that "nothing in the claims of the '547 patent points to selecting crystalline Form A out of over 15 solid forms disclosed in the specification of the '547 patent. It would not be obvious to a POSA to select any specific solid form of Compound I, let alone crystalline Form A of Compound I, as required by Applicant's claims." *Id.* at 7-8.

63.     The USPTO agreed with Vertex's February 7, 2025, Reply and mailed a Notice of Allowance on March 20, 2025. Ex. O.

64.     Obtaining the Notice of Allowance (*id.*) from the USPTO did not require addressing any alleged "spontaneous" change of chemical compounds "in a wet environment" to "the most thermodynamically stable form at the lowest energy level of the compound, which must be the same in the instant [application] and the patent," as had been asserted in the withdrawn, vacated, and superseded July 18, 2024, Office Action. *Compare* Ex. I at 4-5, *with* Ex. N at 7-8.

65.     The '262 patent ultimately issued on July 8, 2025. Ex. A at cover.

**C.      Defendant's Abrogation of the Patent Term Guarantee**

66.     The Director awarded the '262 patent 0 days of PTA. Ex. A at cover.

67.    The Director did not account for the 46 days of USPTO A Delay attributable to the December 19, 2024, Office Action.

68.    Instead, despite the July 18, 2024, Office Action being "Withdraw[n]/Vacat[ed]" on December 13, 2024, the Director treated the July 18, 2024, Office Action as meeting the USPTO's statutory obligations. *See* Ex. F at Entry 57.

69.    But as reflected in the USPTO's administrative record for the '660 application, the USPTO took three unilateral actions when it withdrew the July 18, 2024, Office Action and replaced it with the December 19, 2024, Office Action: (1) withdrawing the July 18, 2024, Office Action; (2) forwarding the '660 application to the examiner for examination; and (3) issuing the December 19, 2024, Office Action. *See id.* at Entries 57-60.

| 60 | 12/19/2024 | Mail Final Rejection (PTOL-326) | | 0 | 0 |
| 59 | 12/13/2024 | Final Rejection | | 0 | 0 |
| 58 | 12/13/2024 | Date Forwarded to Examiner | | 0 | 0 |
| 57 | 12/13/2024 | Withdrawing/Vacating Office Action Letter | | 0 | 0 |

70.    The July 18, 2024, Office Action being "Withdraw[n]/Vacat[ed]" on December 13, 2024, was not the result of back and forth between the USPTO and Vertex. *See* Ex. F at Entry 57; Ex. E at 4; Ex. J at 3.

71.    The July 18, 2024, Office Action being "Withdraw[n]/Vacat[ed]" on December 13, 2024, was not the result of give and take between the USPTO and Vertex. *See* Ex. F at Entry 57; Ex. E at 4; Ex. J at 3.

72.    There was no interview conducted with the USPTO and Vertex between the July 18, 2024, Office Action and that action being withdrawn on December 13, 2024. *See* Ex. F at Entry 57; Ex. E at 4; Ex. J at 3.

73.     Vertex did not file a reply to the July 18, 2024, Office Action prior to the July 18, 2024, Office Action being "Withdraw[n]/Vacat[ed]" on December 13, 2024. *See* Ex. F at Entry 57; Ex. E at 4; Ex. J at 3.

74.     When the '262 patent issued with 0 days of PTA, Vertex timely filed both a Patent Term Adjustment Petition ("the Petition") and a Refund Request based on the unilateral withdrawal of the July 18, 2024, Office Action. Ex. L; Ex. M.

75.     In the Petition, Vertex sought a net total of 23 days of PTA as compared to the 0 days that had been awarded. Vertex explained that the Director had contravened 35 U.S.C. § 154(b)(1)(A) by erroneously relying on the withdrawn July 18, 2024, Office Action rather than awarding 46 days of A Delay to reflect the superseding December 19, 2024, Office Action having been mailed 4 months and 46 days after Vertex's July 3, 2024, Reply. Ex. L at 1-5. Accounting for this additional A Delay, the Petition provided the correct calculation of PTA for the '262 patent: 112 days (USPTO A Delay) plus 0 days (USPTO B Delay) plus 0 days (USPTO C Delay) less 89 days (Applicant Delay) equals 23 days of PTA. *Id.* at 4-5.

76.     In the Refund Request, which was granted, Vertex sought a refund for fees paid based on it having been improper for the USPTO to have "maintain[ed] the response period from July 18, 2024[,] once the previous communication was withdrawn" and vacated according to Entry 57 of the USPTO's PTA calculation. *Id.* at 7-8; Ex. M; Ex. F at Entry 57.

77.     But on January 7, 2026, the Director denied Vertex's Petition, despite the July 18, 2024, Office Action having been unilaterally withdrawn, vacated, and superseded, and despite the Refund Request based on that fact having been approved. Ex. B.

78.     Citing to *Pfizer, Inc. v. Lee*, 811 F.3d 466 (Fed. Cir. 2016), the Director found that the unilaterally vacated July 18, 2024, Office Action was "sufficient to meet the notification

requirement under 35 U.S.C. [§] 132 to stop the accrual of 'A' delay at the time of its mailing" under the "plain language of the statute." Ex. B at 5-6 (citing 35 U.S.C. § 154(b)(1)(A)(ii)).

79.    The Director further found that "the subsequent issuance of a second final Office Action on December 19, 2024, constitutes the typical back and forth involved in the examination of an application." *Id.* at 6.

80.    The Director further found that "merely restarting the period for response in the second Office action issued December 19, 2024, especially during the give-and-take process of examination, does not alone entitle a patentee to an 'A' delay of 23 days within the meaning of the statute and regulations." *Id.*

81.    Defendant has improperly calculated the PTA for the '262 patent in a manner that deprives Vertex of the full amount of A Delay, because Defendant erroneously treated its unilaterally withdrawn, vacated, and superseded July 18, 2024, Office Action as a response to applicant's Reply under 35 U.S.C. § 132 as set forth in 35 U.S.C. § 154(b)(1)(A)(ii).

82.    Defendant's factual findings that the USPTO's actions in unilaterally withdrawing and vacating the July 18, 2024, Office Action and issuing the superseding December 19, 2024, Office Action "constitute[] the typical *back and forth* involved in the examination of an application" and "the *give-and-take process* of examination" are not supported by evidence or analysis. *See* Ex. B at 6 (emphases added); Ex. E at 4; Ex. J at 3; *see* Ex. F at Entries 57-60.

83.    Defendant's factual findings that the USPTO's actions in unilaterally withdrawing and vacating the July 18, 2024, Office Action and issuing the superseding December 19, 2024, Office Action "constitute[] the typical *back and forth* involved in the examination of an application" and "the *give-and-take process* of examination" are contradicted by the USPTO's records, which

reflect the absence of any "*back and forth*" or "*give-and-take*" with Vertex regarding the July 18, 2024, Office Action. Ex. B at 6 (emphases added); Ex. E at 4; Ex. F at Entries 57-60; Ex. J at 3.

84.     Defendant's incorrectly calculated PTA also cannot be reconciled with Defendant's decisions in *Oncolytics* (Ex. P) and *Janssen* (Ex. Q) where Defendant found that a unilaterally vacated office action was a "non-event" for the purposes of calculating A Delay because it was *not* "part of the *give-and-take process* between the Office and an applicant that is typical during the normal course of patent examination." *See* Ex. P at 4-5; Ex. Q at 2-3 (emphasis added).

85.     When the period of A Delay is corrected to treat the December 19, 2024, Office Action as the operative paper under 35 U.S.C. § 154(b)(1)(A)(ii) and 37 C.F.R. § 1.703(a)(2), the correct PTA is 23 days:

| Document | Delay Type | Amount |
|---|---|---|
| January 5, 2024, Office Action | USPTO A Delay | 66 days |
| July 3, 2024, Reply | Applicant Delay | -89 days |
| December 19, 2024, Office Action | USPTO A Delay | 46 days |
| | **Total Delay** | **23 days** |

86.     Vertex timely files this action within 180 days of January 7, 2026, pursuant to 35 U.S.C. § 154(b)(4)(A).

**COUNT 1**
**ACTION FOR ADJUSTMENT OF PATENT TERM UNDER 35 U.S.C. § 154(b)**

87.     The allegations of paragraphs 1-86 are incorporated in this claim for relief as if fully set forth herein.

88.    The PTA for the '262 patent, as determined by the Defendant under 35 U.S.C. § 154(b) and listed on the face of the '262 patent, is 0 days. *See* Ex. A at cover; Ex. B; Ex. F.

89.    Under 35 U.S.C. § 154(b), Vertex is entitled to an adjustment of the term of the '262 patent of 23 days, the number of days attributable to the number of days of USPTO delay less the number of days of Applicant Delay.

90.    35 U.S.C. §154(b)(1)(A) guarantees prompt responses by the USPTO. Failure of the USPTO to respond to an applicant reply under 35 U.S.C. § 132 within 4 months results in awarding an extension of the term of the patent by one day for each day after expiration of the 4-month period until the required response is provided.

91.    Vertex filed an Office Action Reply on July 3, 2024, and under 35 U.S.C. § 154(b)(1)(A)(ii), the USPTO was required to award A Delay for failing to respond within 4 months (i.e., by November 3, 2024). *See* Ex. H at 1-12.

92.    The USPTO mailed an Office Action on July 18, 2024. Ex. I. Without any substantive discussion, correspondence, or communication with Vertex, the USPTO unilaterally withdrew and vacated the July 18, 2024, Office Action on December 13, 2024. Ex. F at Entry 57.

93.    Without any substantive discussion, correspondence, or communication with Vertex, the USPTO then mailed a superseding Office Action on December 19, 2024. Ex. F at Entry 60; Ex. J; Ex. E at 4.

94.    The December 19, 2024, Office Action was mailed 46 days later than the 4-month guarantee of 35 U.S.C. § 154(b)(1)(A)(ii) for a response to Vertex's July 3, 2024, Reply. Ex. F at Entry 60; Ex. J.

95.     The Director erred in calculating the patent term adjustment for the '262 patent by treating its unilaterally withdrawn, vacated, and superseded July 18, 2024, Office Action as satisfying the promptness requirement of 35 U.S.C. § 154(b)(1)(A)(ii).

96.     At least because the July 18, 2024, Office Action was unilaterally withdrawn and vacated by the USPTO, it was not an effective response for purposes of the statute, and it should have been treated as legally void and a "non-event" for purposes of 35 U.S.C. § 154(b)(1)(A)(ii).

97.     Had the Director calculated delay under 35 U.S.C. § 154(b)(1)(A)(ii) in response to Vertex's July 3, 2024, Reply, based on its superseding December 19, 2024, Office Action, there would have been an additional 46 days of A Delay.

98.     Accordingly, an additional 46 days of A Delay should have been assessed based on the December 19, 2024, Office Action per 35 U.S.C. § 154(b)(1)(A)(ii).

99.     Because the Director relied on its erroneous calculation of A Delay, the Director also erred in calculating the total patent term adjustment to be 0 days, which is 23 days less than the correct patent term adjustment required by law.

100.    The Court should order that the 0 days of PTA determined by the Director should be corrected to the full 23 days to which Vertex is entitled by statute.

**COUNT 2**
**FINAL AGENCY ACTION IN VIOLATION OF 5 U.S.C. § 706(2)(A)**

101.    The allegations of paragraphs 1-100 are incorporated in this claim for relief as if fully set forth herein.

102.    The USPTO is an agency of the United States government. Judicial review of its Director's action is not precluded and is expressly permitted by statute. *See* 35 U.S.C. § 154(b)(4)(A). The calculation of patent term is determined by statute and not committed to the USPTO's discretion.

103.    The Director's determination of 0 days of PTA for the '262 patent is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" within the meaning of 5 U.S.C. § 706(2)(A).

104.    Defendant's determination of 0 days of PTA for the '262 patent in its January 7, 2026, Patent Term Adjustment Petition Denial was a final agency action reviewable by a district court in accordance with 5 U.S.C. § 704 and 35 U.S.C. § 154(b)(4)(A).

105.    Vertex has exhausted all available administrative remedies under 35 U.S.C. § 154(b)(3)(B) or, in the alternative, pursuit of any further administrative remedies is futile.

106.    Vertex will suffer irreparable harm if Defendant is not directed to award the 23 days of PTA to which it is entitled.

107.    There is an actual controversy between the parties within this Court's jurisdiction.

108.    An order directing Defendant to award 23 days of PTA to the '262 patent would not substantially injure any other interested parties, and the public interest will be furthered by correction of PTA.

109.    Vertex is entitled to an additional 46 days of A Delay such that the 0 days of PTA granted by the Director should be changed to 23 days.

**COUNT 3**
**VIOLATION OF THE FIFTH AMENDMENT OF THE**
**CONSTITUTION OF THE UNITED STATES**

110.    The allegations of paragraphs 1-109 are incorporated in this claim for relief as if fully set forth herein.

111.    The Fifth Amendment of the Constitution of the United States provides, in relevant part, "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

112.    Vertex enjoys a substantial and cognizable private property right in the full and complete term of the '262 patent.

113.    Vertex has not failed to pay any necessary maintenance fees to the USPTO required to maintain its rights in the '262 patent.

114.    Defendant's purposeful and deliberate diminution of the patent term of the '262 patent constitutes a taking of Vertex's property without just compensation, in violation of the Fifth Amendment of the Constitution of the United States. U.S. Const. amend. V.

115.    Vertex is entitled to additional patent term for the '262 patent such that the 0 days of PTA granted by the Director should be changed to 23 days.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

A.  Conclude, pursuant to 35 U.S.C. § 154(b), that Defendant's PTA calculation is invalid and contrary to law, and the correct amount of PTA for the '262 patent is 23 days;

B.  Enter a final judgment correcting the PTA for the '262 patent from the currently calculated 0 days to the correct 23 days, in accordance with 35 U.S.C. § 154(b), and requiring the Defendant to alter the term of the '262 patent to reflect such additional PTA; and

C.  Grant such other and further relief as the nature of the case may admit or require and may be just and equitable.

Dated: July 1, 2026

Respectfully submitted,

*/s/ Cara Regan*
Mark Feldstein (*pro hac vice* forthcoming)
Cara Regan, VA Bar No. 87736
Mary Till, VA Bar No. 48839 (application for admission pending)
Alissa Green (*pro hac vice* forthcoming)
**FINNEGAN, HENDERSON, FARABOW,**
 **GARRETT & DUNNER, LLP**
901 New York Avenue, NW
Washington, DC 20001-4413
Telephone:    (202) 408-4000
Facsimile:    (202) 408-4400

David Weingarten (*pro hac vice* forthcoming)
**FINNEGAN, HENDERSON, FARABOW,**
 **GARRETT & DUNNER, LLP**
271 17th Street NW, Suite 1400
Atlanta, GA 30363
Telephone:    (404) 653-6400
Facsimile:    (404) 653-6444

Attorneys for Plaintiff Vertex Pharmaceuticals Incorporated